FILED
2010 Jul-13 PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WENDELL DALE PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-0953-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Wendell Dale Phillips, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

     (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

     In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 50]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself.</u> Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.</u> See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

6

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Stout found that the plaintiff "has the following severe impairments: radiculitis lumbar, degenerative disc disease of the lumbar spine, herniated nucleus pulpous [sic] of the lumbar spine without myelopathy and chronic low back pain with possible stenosis with some evidence of peripheral neuropathy, and borderline intellectual functioning. . . ." [R. 47]. At the ALJ hearing on June 23, 2007, the plaintiff amended his alleged onset date to June 23, 2007, the date he was involved in a motor vehicle accident. [R. 397-398]. The plaintiff was seen at UAB Highlands emergency room that day, and x-rays of his lumbar spine revealed no fracture, but did show that the "L5-S1 interspace is compromised and there is degenerative skeletal change on either side of this joint space. There appears to be degenerative disc disease with a vacuum sign present." [R. 311]. On July 27, 2007, he returned to the emergency room, complaining of low back pain at an eight on a 10-point scale. [R. 305]. On physical examination, there was muscle spasm and paravertebral tenderness. [R. 303]. A September 13, 2007, MRI of the plaintiff's lumbar spine showed:

1. Discogenic and facet joint degenerative changes most pronounced at L5-S1.

2. L5-S1 right paracentral disc extrusion with effacement of the descending right S1 nerve root.

    3.       L4-5 broad-based central to left paracentral disc protrusion with effacement of the descending left L5 nerve root.

    4.       L2-3 small focal left paracentral disc protrusion with displacement of the descending left L3 nerve root.

[R. 321].

On November 19, 2007, the plaintiff was seen by Robert L. Hash, II, M.D., a neurosurgeon. Dr. Hash stated that the plaintiff reported that his low back pain and right leg pain began after his vehicle was struck in the rear by a beer delivery truck:

> He said he immediately had pain in his low back and right leg. He states he has numbness that goes down the back of the right leg all the way to the heel. He said it is constant, as well as his low back pain and there is nothing he can do to relieve it. He has taken anti-inflammatories, pain medications and muscle relaxants. He is just not getting the relief he needs.

[R. 316]. Dr. Hash thought that the plaintiff has right L5 or S1 radiculopathy, but needed to review the MRI of the lumbar spine which the plaintiff had not brought to the examination. [R. 317]. On November 28, 2007, Dr. Hash reviewed the MRI and diagnosed radiculitis lumbar, degenerative disc disease lumbar, herniated nucleus pulposus lumbar without myelopathy, and low back pain. [R 315]. Dr. Hash wrote:

> I am not optimistic that he will improve without surgical intervention. However, he is not very excited about surgery. I am going to try him with medical treatment and give him some back exercises to do. If he does improve, after the first of the year he will let me know.

[Id.]. After discussing the pros, cons and risks of a lumbar laminectomy with the plaintiff, Dr. Hash decided to try conservative treatment, prescribing Parafon Forte DSC for spasms and Lortab 7.5 mg for pain. [Id.].

On January 28, 2008, Dr. Hash noted that the plaintiff continued to have severe pain down his right leg. [R. 314]. "He is having back and leg pain with numbness in his foot. He has a very large disc herniation on the right at L5-S1." [Id.]. Dr. Hash told the plaintiff "he could try a physical therapy and so on," [sic] but twice noted that the plaintiff wished to proceed with a lumbar laminectomy. [Id.].

On July 31, 2008, the plaintiff was examined by Younus M. Ismail, M.D., at the behest of the Commissioner. [R. 322-327]. The plaintiff told Dr. Ismail that his doctors have recommended that he have surgery, "but he cannot afford to have a surgery at this time." [R. 322]. After examination, Dr. Ismail diagnosed chronic back pain, and possible spinal stenosis with some evidence of peripheral neuropathy. [R. 324]. Dr. Ismail completed a Medical Source Opinion (Physical), in which he opined that the plaintiff would be able to stand for one hour at a time for two hours per day, walk one hour at a time for two hours per day, and sit for two hours at a time for four hours per day, for a total of eight hours. [R. 325]. He limited the plaintiff to lifting and carrying five pounds constantly, 10 pounds frequently, 15 pounds occasionally, and never more than 25 pounds. [Id.].

In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff has medically determinable impairments that could reasonably be expected to produce his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his residual functional capacity assessment. [R. 51]. In rejecting the

plaintiff's credibility, the ALJ mentions that "the claimant's treatment has been conservative in nature despite a recommendation by a Dr. Hash for surgerical [sic] intervention." [Id.]. "Moreover, Dr. Hash gives a favorable outcome fo the claimant after surgery with an expectation of a return to desk work within a few weeks and work requiring lifting within a few months." [Id.]. The court notes that the plaintiff's treating neurologist gave a deposition on March 26, 2008, in a state court lawsuit by the plaintiff against the driver and beverage company involved in the motor vehicle accident. Dr. Hash described his November 28, 2007, visit with the plaintiff:

> He's continuing to have his pain. He told me that he had actually had back pain for years, but when this accident occurred, he developed severe leg pain pretty much immediately after the accidence, and the numbness in the leg. The disc herniation was sitting right on the nerve, and I was not optimistic that it was going to get better without surgery. He wasn't really too excited about the surgery after he heard the risks. And I just recommended he do some back exercises and continuing to take medications.

[R. 335]. Dr. Hash discussed the risks of the surgery:

> One thing is his pain may not get better, would be one risk. The numbness may not get better. He could have paralysis in his foot. He could have a foot drop. He could have bowel or bladder problems or an infection or get another disc herniation, which may require a fusion, or develop instability of the back, which would require a fusion.

[Id.]. Dr. Hash testified that on January 28, 2008, he noted a "large disc herniation on the right at L5-S1." [Id.]. At that time, the plaintiff "was wanting to go ahead and proceed with the surgery." [Id.]. However, he did not do so because he did not have health insurance. [R. 403]. It was improper for the ALJ to discredit the plaintiff's pain

testimony because of Dr. Hash's conservative treatment when it is clear that the plaintiff was apprised of serious risks accompanying the proposed surgery, and could not afford the surgery.[1]

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

The plaintiff testified that he cannot walk for more than five minutes, stand up for more than two to three minutes, and lying down is hard for him because, "I hurt. I can't get up by myself." [R. 403-404]. At the hearing, the VE testified:

> Q: Okay. Now if this individual, this hypothetical individual, had to miss two or more days of work on a monthly basis as a result of pain and discomfort. Would that affect these sedentary jobs, and would it also affect the wide world of unskilled work?
>
> A: Yes, sir. That would preclude all work activity.
>
> Q: If he had to absent himself from the workstation beyond normally scheduled work breaks, and this would be a frequent and chronic requirement and, well, would that affect the wide world of unskilled work?
>
> A: Yes, sir. That would preclude all work activity.

---

[1] Dr. Hash did not state that the plaintiff was noncompliant with his treatment instructions. After the plaintiff first declined the surgery because of the risks outlined by Dr. Hash in his testimony, his proposed treatment was exercises and medication.

>   Q:   If he was unable to concentrate, persist, and pay attention for periods of up to two consecutive hours as a result of severe pain and discomfort, would that have an effect on the wide world of unskilled work?
>
>   A:   Yes, sir.  That precludes all work activity.

[R. 403-404].  Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

Additionally, the court notes that the ALJ found:

> The claimant has borderline intellectual functioning with verbal IQ score of 74, performance IQ score of 75, and full scale IQ score of 72.  The claimant's borderline intellectual functioning does not precluded [sic] unskilled work.  In addition, the claimant's work history reflects work activity at the semiskilled level as well.

[R. 51].  With a full scale IQ score of 72 and an additional impairment of degenerative disc disease and herniated nucleus pulposus, the ALJ should have found the plaintiff disabled under the "POMS." The Social Security Administration in its <u>Procedure and Operations Manual</u> (POMS) at DI 24515.056 D.I.C. provides that a medical equivalence determination may be based upon slightly higher IQ's (e.g.70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the

action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 13 July 2010.

                                                                                  UNITED STATES DISTRICT JUDGE
                                                                                              J. FOY GUIN, JR.